Good morning, Your Honor. John Wallace v. Stephen Murphy. I'd like to reserve the balance of my time or two minutes, whatever the court allows. Plaintiff seeks restitution, $14 million. That is just a position that is just not viable under the judgment. The late Judge Ray awarded $14 million and then went through the required analysis about ability to pay. And he determined nominal restitution payments are ordered as the court finds that the substantial restitution amount and the defendant's economic circumstances might not allow for either immediate or future payment of the amount owed. In addition, when considering a fine, Judge Ray stated, fine is waived or below guideline range because of defendant's inability to pay. I mean, the important thing is restitution rather than a fine. I mean, I say that as a district judge. I mean, if I have a situation, somebody's in front of me and it's either we can fine him or have him pay restitution, I always opt for restitution. I mean, if there's a victim, get the victim restored as much as possible, that's all. I mean, that's the way I read that language. Do you read it differently? That makes perfect sense, Your Honor. What I'm focusing on is that there are two findings of inability to pay. A fine would be $10,000 to a million dollars. If there's a finding of inability to pay, that's fine. But why have him pay a fine? I'm not suggesting that at all. I'm indicating that there are not just one occasion when Judge Ray determined an inability to pay. $14 million restitution. I mean, you have to hit the lottery or something to be able to, or be Bill Gates Jr. I mean, so going in, we know that he can't pay. I mean, there's the restitution sitting out there, and he's not going to be able to pay it immediately. He's not going to say, well, let me write you a check. Here's the $14 million. So let's focus on getting the restitution paid. It seems to me that's what the district judge did, but I don't see where the district judge limited it in his order anywhere to five years. I'm kind of confused. Are you attacking the validity of the original order? Not at all, Your Honor. I'm suggesting the government's action is premised on something that's not in the judgment, and that is the $14 million restitution language can only be interpreted to mean that was an initial statement that was modified, was amended by a finding that the statute required of inability to pay, and the court then decided nominal restitution payments are ordered. It is not an ideal writing. Nominal instead of the $14 million? The only interpretation is nominal instead of the $14 million, because you cannot reconcile the $14 million. Which means the $14 million is meaningless, and it runs at whatever it was, runs out after what, five years? Well, it's not that it ran out. It was fully the nominal payments were fully made, timely. So we ignore the $14 million? I think the only way that you can look at this is that the $14 million constitutes the investors' total losses. There was a plea arrangement. The judgment was based on a plea arrangement. Mr. Murphy served his time. He made those monthly payments. And the court not only determined the economic circumstances at that time, but also referred to the economic circumstances might not allow for either immediate or future payment of the amount owed. And then we look at all the policies behind restitution. The district judge is simply being realistic that nobody is going to be able to pay $14 million. I mean, it's almost like a – I know it's not a holding, but it's like dictum, you know. Nobody is going to be able to pay $14 million. So make nominal payments, and that's all we can expect. That's roughly what I'm saying. Nominal payments on the $14 million, but that doesn't mean the $14 million is no longer due. I mean, he doesn't say, I'm ordering restitution of $14 million. Oh, and by the way, forget that, because the guy can't pay it. I think you go to the Fuentes case, which is exactly that point, which is the judgment got reversed because there was no finding of inability to pay. That was a mandatory, back then, a mandatory factor to consider. Judge Ray considered it and reduced the amount. Well, then how do you square that with the language in the judgment that says, if the amount of restitution order remains unpaid after the termination of supervision, the balance shall be paid as directed by the United States Attorney's Office? It precedes the – oh, I see. If the amount of restitution order remains unpaid, you're telling us that it can't remain unpaid because it's over. No. This is what I'm saying. Mr. Murphy was ordered to pay $500 a month. If he had not paid $500 a month, we could be here. $500 a month until when? Well, the court ordered it – So you're saying the amount of restitution means $500 a month for what, five years? During the period of supervised release, which was five years, which was the maximum under the statute that the court could order. So the court ordered $500 a month. It was paid. And if it had not been paid, then there were remedies. The cases talk of that a defendant cannot simply refuse to pay and let five years expire and be freed. Just to make sure I understand your argument, the argument you're now making is entirely an argument trying to construe the judgment of Judge Ray in terms of what he meant? Yes or no? That and making it consistent with the law that requires this finding. Well, let's start out with what Judge Ray ordered, and then we can talk about consistency with the law. After the paragraph that Judge Trott just read, if the amount of restitution order remains unpaid, the next paragraph says, until restitution has been paid in full, the defendant shall notify the AG of any change in address and so on. I read this order as imposing an obligation to pay in full. And it stands out there until it's paid in full. It may be that he can't pay it. That's a different question. But as I read the order, it contemplates an obligation to pay until it is paid in full. Your Honor, the ability to pay, at least then under the Victims' Witnesses Protection Act, which now does no longer exist, but this was operative under that law, that law required certain considerations to be considered, certain factors to be considered. One was the ability to pay. We have a finding here on ability to pay. But what about the specific award of restitution in the amount of $14 million in change pursuant to 18 U.S.C. 3663? That's the extension. How do you cope with that? Your Honor, Judge Ray is not here with us to interpret it. What needs to be interpreted? You cannot reconcile the $14 million restitution amount with a finding that there was an inability to pay. It cannot be done. The reasoning of this judgment is necessarily I recognize that there's $14 million of losses. This man cannot pay $14 million. That should have been dealt with in a direct appeal. Your Honor, this ‑‑ That's why I asked where are we. If I may, Mr. Murphy understood the judgment as I'm articulating it and was shocked that the government came in. How do we know that? How do you know that? How do we know that? Well, his behavior is such that he had a plea agreement. The court accepted the plea agreement. So when Mr. Murphy and his counsel heard an award of $14 million in change pursuant to 18 U.S.C. 3663 in conjunction with everything else that was said, he thought, oh, I just have to pay X amount of money for five years during my supervised release and I'm off the hook. The $14 million means nothing. Absolutely, Your Honor, if you want to phrase it that way. It is ‑‑ he's complied. He did what he was expected to do under a judgment that frankly is not clear and any ambiguity has to be construed in his favor. Why don't we hear from the other side? Yeah, okay, I'm ready to hear from Mr. Rittlesy. May it please the court, good morning, my name is Frank Rittlesy and I'm here today as the Assistant United States Attorney representing the interests of the individuals who were defrauded by Stephen Murphy. This is a statutory interpretation case. There are two statutes that are principally involved. The first statute says that restitution judgments are enforceable for a period of 20 years. The other statute that's involved is the now repealed Section 3579F, which says that the court can make an installment payment order of restitution with the last payment that's ordered under the installment payment arrangement being not more than five years following the defendant's release from custody. Mr. Murphy contends that those statutes are somehow in conflict and that he's entitled to have them interpreted to permit him to escape his restitution obligation at the end of the five‑year payment of installments. But he's also saying my restitution obligation was only to pay X amount of money a month for the term of supervised release. He goes right away and says that's my restitution obligation. He repudiates the idea that it's $14 million. Yes. And so a fair question is how is it that Judge Ray got to $14 million in this case as the appropriate restitution award? And the answer is that Murphy agreed to it in his plea agreement. Murphy agreed to pay full restitution for all of the damage caused by his fraud scheme. Do you have that plea agreement in the excerpts that you provided us? Your Honor, I don't have the plea agreement, but I did this week lodge the pre-sentence report under seal with the court. This week you did that? I did that. No wonder we don't have it. And I will ‑‑ And even then you didn't lodge the plea agreement? I don't have the plea agreement in my file, Your Honor. I see. Were you the attorney in the original case? No, sir. Okay. Your Honor, in ‑‑ You know, as one of my friends used to say, trust but verify. How do we verify what you just said if we don't have it? Well, I can read to you, Your Honor, from page 5, paragraph 8 of the pre-sentence report under seal. The one that you gave us that we don't yet have? Correct, Your Honor. Okay. Yes. And it says as follows. Plea agreement. Pursuant to the plea agreement between Murphy and the government, Murphy agrees to make full restitution for the losses caused by his activities. He agrees that the restitution order is not restricted to the amounts alleged in the counts to which he is pleading guilty. Murphy further agrees that he will not seek the discharge of any restitution obligation in whole or in part in any present or future bankruptcy proceeding. So under Soderling, this Court has established very plainly that if a defendant agrees in the plea agreement to make restitution beyond the counts of conviction, the Court can order it. And he agreed to it. That's why it's $14 million. So then we go back to this issue of the five‑year installment payment and what it means in conjunction with the provision of the criminal code that says restitution is available for 20 years. And I would submit that under this Court's prior decisions, it's very clear what that means. It means that for the first five years following release from prison, the defendant is required to comply with the installment payment order. And following the completion of the installment payment order, the judgment becomes enforceable in the same manner as a civil judgment. It's just not that the Court directs monthly payments pursuant to an installment order because 3579F said that the Court could only order that for five years. Is Soderling a key case in our decision‑making process? Yes, I think it is. How did everybody miss it? It wasn't in the briefs that I could find. Well, I apologize for that, Your Honor. But Soderling is one of my favorite cases. And usually when I'm in the Ninth Circuit arguing restitution cases, I cite the Soderling case. So it's out of character for me not to have done it. But it says in footnote 12 in Soderling that the Victim Witness Protection Act does not require the judgment to be limited in duration. And the Court noted that if the defendant did not pay the full amount of restitution within the five‑year period of the payment schedule, the defendant could petition the Court for relief from the restitution order. Did Judge Ray Fyman in the building pay? Judge Ray made the findings with respect to the ability to pay that are required by the Victim Witness Protection Act. And he also took the defendant up on his offer to pay full restitution. And that's appropriate under the Soderling case. How did the district court, whose order the appeal was taken from, get the notion that the relevant statute was the MVRA? I don't think it did, Your Honor. I think the Court sentenced the defendant under the Victim Witness Protection Act. I'm not talking about the sentencing court. I'm talking about Judge Reel. Oh. How did he get the notion that that was the governing statute? I believe, Your Honor, probably because Murphy argued that the defendant had been improperly sentenced under the MVRA. And were you in front of Judge Reel also? Yes, Your Honor. And did you say, sorry, Your Honor, that's not the governing statute? Your Honor, in our memorandum that we submitted to the Court, we noted that the defendant had been sentenced under the Victim Witness Protection Act. And that the MVRA was not relevant? Yes, Your Honor. So, Your Honor, unless there are other questions that the members of the panel have, I would offer the matter to be submitted, and I thank you for your consideration of our arguments. One minute. I didn't hear any reconciliation of the inability to pay factor with the $14 million amount. I dispute what the plea agreement said. I don't have the plea agreement. Have you seen the PSR that apparently was submitted to us in the last week? No, Your Honor. No, I haven't. So, Mr. Whittlesley, did you send the PSR to your adversary? Yes, Your Honor, I believe I did, but I have a copy I can give you right now. But you have not seen it yet? I have seen it on prior occasions, yes. Oh, you have seen it? Yes. But, Your Honor, the judgment is what we're here to interpret. The judgment is ambiguous. There's no question it's ambiguous because of the ability to pay finding. That finding cannot be ignored. Okay. Thank you. Thank you. United States v. Murphy is now submitted for decision. The last case on the argument calendar, I'm not sure I'm pronouncing that correctly, Valaisis v. Astrum.
judges: Mahan, Trott, Fletcher W.